IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY L. BONZO,

        Plaintiff,

    v.                               Case No. 13-2468-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of

Social Security which denied plaintiff disability insurance benefits. The

matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which

provides that "the findings of the Commissioner as to any fact, if supported

by substantial evidence, shall be conclusive." The court should review the

Commissioner's decision to determine only whether the decision was

supported by substantial evidence in the record as a whole, and whether the

Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d

983, 984 (10th Cir. 1994). When supported by substantial evidence, the

Commissioner's findings are conclusive and must be affirmed. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires more than

a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U .S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is

2

on the list of impairments presumed severe enough to render one disabled.
If the claimant's impairment does not meet or equal a listed impairment, the
inquiry proceeds to step four, at which the agency assesses whether the
claimant can do his previous work. The claimant is determined not to be
disabled unless he shows he cannot perform his previous work. The fifth step
requires the agency to consider vocational factors (the claimant's age,
education, and past work experience) and to determine whether the
claimant is capable of performing other jobs existing in significant numbers
in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

The claimant bears the burden of proof through step four of the
analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993). At step
five, the burden shifts to the Commissioner to show that the claimant can
perform other work that exists in the national economy. *Nielson,* 992 F.2d at
1120; *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). The
Commissioner meets this burden if the decision is supported by substantial
evidence. *Thompson,* 987 F.2d at 1487.

## II. Procedural History

This case has a lengthy history. Plaintiff first filed his applications in
March of 2002, and they were denied initially and on reconsideration. In
December of 2005, an administrative law judge (ALJ) found Plaintiff not
disabled, but the Appeals Council granted Plaintiff's request for review and
remanded the case to an ALJ for further consideration. A second ALJ issued

an unfavorable decision in September of 2006, which the Appeals Council also remanded. In September of 2007, the second ALJ issued another unfavorable decision, which the Appeals Council again remanded. In March of 2010, a third ALJ issued an unfavorable decision which this Court reversed and remanded on the parties' agreed order in February of 2012. On remand, the Appeals Council directed an ALJ to offer Plaintiff a hearing and issue a new decision. In May of 2013, following a March of 2013 hearing, a new ALJ found that Plaintiff was not disabled. The Appeals Council declined jurisdiction of the case, making this the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984, 416.1484.

Plaintiff, at age thirty-seven, filed applications for disability insurance benefits and SSI primarily alleging left arm pain that limited his use of that arm. At step one, the administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since November 15, 2000, his alleged onset date. The ALJ found at step two that plaintiff has severe impairments of reflex sympathetic dystrophy/nerve damage to the left elbow status post-surgery (complex regional pain syndrome), obesity, mild degenerative disc disease of the cervical spine, and status post-myocardial infarction with stent and defibrillator placement. But the ALJ found at step three that those impairments did not meet or equal the severity of a listed impairment presumed severe enough to render one disabled.

Accordingly, the ALJ determined plaintiff's residual functional capacity (RFC) and found he had the ability to perform light work except:

> He may occasionally climb stairs, but should never climb ropes, ladders or scaffolds. He is limited to occasional pushing and pulling with his left upper extremity. He is limited to jobs that do not require constant rapid repetitive hand movements with his non-dominant left upper extremity. He is limited to no overhead reaching and handling with the left upper extremity. He is limited to occasional fingering with the left upper extremity. Secondary to reported chronic pain and potential side effects of medications, he is limited [to] jobs that do not demand attention to details or complicated job tasks or instructions.

Dk. 3, Exh. 1, p. 1072.

The ALJ found the plaintiff could not perform his past relevant work (a machinist, truck driver, or loader) but found that plaintiff could perform other jobs that exist in significant numbers in the national economy, including sales attendant, shipping receiving weigher, and bakery conveyor worker. The ALJ thus determined Plaintiff is not disabled.

## III. RFC Analysis

Plaintiff first contends that the ALJ's RFC findings fail to account for all of his documented physical and mental limitations shown in the record.

### Physical

Examining physicians Carabetta, Koporivica, and Fishman recommended limitations to plaintiff's ability to grasp, found that plaintiff could not use his left arm in a functional manner, and found that he should rarely use his left arm for vocational activities. But the ALJ did not impose each of those restrictions. Instead, the ALJ explained that he gave Dr.

Fishman's opinion that plaintiff could not use his left arm functionally in assembly work requiring repetitive motion "some weight," but found that opinion inconsistent with the other workers compensation exams and with daily tasks that Plaintiff undertook, particularly mowing the yard. *Id*, p. 1078. The ALJ gave "more weight" to Dr. Carabetta's opinion, and reduced it somewhat to account for the plaintiff's allegations as well as his subsequent heart attack.

The ALJ gave significant weight to the opinion of consultative examiner Winkler, because unlike other physicians, she "accounted for the claimant's left-sided limitations." Dk. 3, Exh. 1, p. 1077. She found that plaintiff was limited to occasional reaching, handling, fingering, feeling, pushing, and pulling with his left hand. The ALJ imposed an additional restriction by limiting plaintiff to no overhead reaching or handling with his left arm.

A state agency consultant recommended in 2002 that plaintiff avoid repetitive motions with his left hand and only occasionally reach and finger with his left arm. The ALJ addressed this opinion as well, noting the consultant's conclusion that plaintiff had the capacity to perform light work and maintained strength and ability to perform many activities of daily living. The RFC varies insignificantly from this consultant's recommendation in stating that plaintiff should avoid "constant, rapid repetitive" movements and overhead reaching with his left hand.

Plaintiff contends that the ALJ improperly failed to give controlling weight to the opinion of plaintiff's treating physician, Dr. Ramirez. In 2002, Dr. Ramirez stated that plaintiff should avoid machinist work, and the ALJ gave that conclusion some weight. In 2005, Dr. Ramirez submitted a medical source statement suggesting that plaintiff was totally disabled, but the ALJ found that to be an "older opinion" having "little probative value and address[ing] only a determination to be made by the Commissioner, that of ultimate disability." *Id*, p. 1077. The ALJ reviewed Dr. Ramirez's treatment records and found that they "failed to imply any specific limitations that would preclude all work activity." Plaintiff contends the ALJ's analysis is "contrary to the holding in *Coleman v. Astrue*, 523 F. Supp.2d 1264, 1270 (D. Kan. 2007)," but the ALJ's narrative reflects that he found Dr. Ramirez's opinion not well-supported by medically acceptable clinical or laboratory diagnostic techniques, as precedent[1] permits. See *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("A treating physician's opinion must be given controlling weight if it "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.").

The ALJ also found Dr. Ramirez's conclusion of disability inconsistent with plaintiff's activities of daily living. In support of his credibility findings,

---

[1]The *Coleman* decision is not binding on this court. *See Camreta v. Greene,* ___ U.S.___, 131 S.Ct. 2020, 2033 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134–26 (3d ed. 2011).").

the ALJ referred twice to Plaintiff's ability to mow his yard using a zero-turn mower, and once added that the mower "requires almost constant pushing and pulling to operate." Dk. 1, Exh. 3, p. 1073, 1078. Plaintiff correctly notes that no evidence of record shows whether or not plaintiff's lawn mower required constant pushing and pulling. But the ALJ's personal commentary about the nature of zero-turn mowers does not detract from his accurate finding that Plaintiff admitted to mowing his yard with a zero-turn mower for 15 minutes at a time. The ALJ additionally found that Plaintiff prepares dinner most days for his wife, washes dishes, attends his daughter's basketball games, attends church every week, drives to medical appointments, drives to the bank (where he met his wife), and exercises on an elliptical machine. Plaintiff mounts no challenge to those activities of daily living. When read as a whole, the ALJ's decision shows that he weighed the treating physician's opinion using the relevant factors and gave good reasons for doing so. *See Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171 (10th Cir. 2014); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004); *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted).

The ALJ also found plaintiff's claim of disabling pain lacked credibility based in part on plaintiff's inaction. The ALJ found that plaintiff had "long periods of time with no treatment," and "infrequent visits with his primary care physician, Dr. Ramirez." Dk. 3, Exh. 1, p. 1075. Plaintiff contends he

consistently saw his primary care doctor for refills of pain medications and to discuss possible new options for treatment. The record shows Plaintiff saw Dr. Ramirez in August of 2004, July of 2005, February of 2007, April of 2008 and July of 2008. Exhibit 14F p. 812-814. Characterizing these visits as infrequent is a reasonable conclusion. But even if the that characterization is debatable, the court has no difficulty with the gist of the ALJ's finding, which is that the number of plaintiff's visits to his primary care physician fails to support the severity of the limitations alleged by Plaintiff.

The ALJ further found plaintiff's "lack of tenacity in pursuing all options for pain control" to be "inconsistent with his allegations that the pain is unbearable and prevents all work." *Id*, p. 1078. This too is a relevant factor in evaluating credibility. *See Alarid v. Colvin*, ___ Fed.Appx. ___, 2014 WL 6602441(10th Cir. 2014). Plaintiff consulted Dr. Elliott, a pain management doctor, in 2012, but she never gave an ultimate conclusion as to the claimant's limitations. And Plaintiff did not pursue any potential treatment she recommended - spinal cord stimulations or intrathecal pump therapy - although plaintiff had insurance at the time. To this, plaintiff states only that he could not pursue those options until he got off Plavix, which he did not do, and that the stimulator had to be compatible with his pacemaker. But no evidence shows that such compatibility was not feasible, nor does the record reflect any other good reason why a person who suffers from disabling pain would not pursue the course of treatment most recently recommended by a

physician who is a pain specialist. The Court finds no harmful error in the ALJ's analysis of this point.

Plaintiff also contends that the ALJ failed to evaluate the testimony of various persons. First, Plaintiff contends that "in the context of his credibility assessment, the ALJ also failed to evaluate the opinion of psychologist Todd Schemmel, that if returned to work, plaintiff would likely encounter regular interference from his pain symptoms." Dk. 10, p. 77. But that psychologist's opinion is dated in 2002 – eleven years before the hearing - and is expressly limited to plaintiff's then "current state." It provides in relevant part:

> If returned to a work setting, Gary would likely encounter regular interference from his pain symptoms, but not his depression or anxiety.

*Id*, p. 630. Additionally, Plaintiff fails to explain how this psychologist's opinion has so much bearing on his functional limitations that the ALJ should have specifically discussed that opinion in determining his RFC for light work.

Secondly, Plaintiff alleges error in the ALJ's failure to evaluate the 2006 testimony of Plaintiff's ex-wife and a friend. Plaintiff's wife in 2006 testified that when plaintiff stocked items and worked at the liquor store they owned he was in pain for two or three days thereafter. Dk 3, Exh. 1, p. 1004. She also testified that sometimes plaintiff was in bed when she left for work and was still in bed when she came home, literally crying from pain. R. 994. But she did not estimate how often those events occurred. Mr. Brown, (apparently the friend plaintiff alludes to) testified he saw plaintiff "bzzt" in

10

bed two or three times a week, R. 1000, that plaintiff "can do certain things" but would "pay for it" the next day, R. 1001, and that he can tell when plaintiff is in pain because "his face gets pretty red and he gets all swollen up... he's kind of, groggy, doped up." Dk. 3, Exh. 1, p.1012.

But the ALJ need not discuss every piece of evidence in the record. *Mays v. Colvin,* 739 F.3d 569, 571 (10th Cir. 2014). And when an "ALJ indicates he has considered all the evidence, the Court's practice is to take the ALJ at his word." *Wall v. Astrue,* 561 F.3d 1048, 1070 (10th Cir. 2009) (internal quotation marks omitted). The court finds no fault in the ALJ's not examining this and other testimony from prior hearings. This evidence is largely cumulative in significant part of plaintiff's own testimony and that of his wife at the 2013 hearing, which the ALJ expressly discussed. *See e.g.*, *Id*, p. 1073 (stating that Plaintiff sleeps very poorly at night due to his pain and sometimes moans in pain, and she sees signs of depression). The ALJ's failure to discuss all the testimony given in prior hearings was not critical to the outcome of this case, and Plaintiff has not demonstrated error.

Plaintiff also alleges reversible error because the ALJ did not state the weight he gave Plaintiff's wife's 2013 testimony. But the ALJ specifically addressed her testimony, and the regulation does not require the ALJ to state in his decision what credibility and weight he gives to lay testimony. *See* 20 C.F.R. § 404.1513(d)(4) (stating that the ALJ *may* use evidence from '[o]ther non-medical sources, but not stating that the ALJ *must* state in his

decision what credibility and weight he gave to other non-medical sources, including a spouse.)

The Court finds no reversible error in the ALJ's treatment of Plaintiff's documented, credible physical limitations shown in the record. Where, as here, the court can follow the adjudicator's reasoning in conducting its review, and can determine that correct legal standards have been applied, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012). The Court must exercise common sense and "cannot insist on technical perfection." *Id.*

### Mental

The ALJ found plaintiff's depressive disorder to be non-severe, resulting in only mild limitations. Plaintiff contends only that "the ALJ did not adequately evaluate the effect of plaintiff's depression in combination with his severe pain." Dk. 10, p. 81. But that conclusory assertion is not developed in the brief. In support of that assertion, Plaintiff recites portions of the record relating to his depression, a psychological evaluation by Dr. Schemmel, and psychologist Cool's testimony from a prior hearing, but Plaintiff includes no analysis. The Court will not connect the dots for the Plaintiff or make his argument for him. Facts[2] coupled with only conclusory assertions do not provide a basis for reversal. *See Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1546 (10th Cir. 1995) (noting "[j]udges are not like pigs,

---

[2] The court also notes that Plaintiff restates portions of the record in the initial 60 pages of his brief, but does not specifically reference most of those facts in his arguments.

hunting for truffles buried in briefs"); *United States v. Garcia*, 71 Fed.Appx. 781, 784 (10th Cir. 2003) (the court does not consider arguments not properly developed in the briefs); *Craven v. University of Colorado Hosp. Authority*, 260 F.3d 1218, 1226 (10th Cir. 2001) (the Court will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim).

Plaintiff also cites *Tibbits v. Shalala*, 883 F. Supp. 1492, 1500 (D. Kan. 1995) as support for his assertion that the ALJ failed to evaluate the effect of plaintiff's depression in combination with his pain, but the cited page relates solely to the completion of a PRT form – an issue not raised here.

**VE Testimony**

The ALJ's hypothetical question to the vocational expert (VE) must accurately reflect the "impairments and limitations that were borne out by the evidentiary record." *Newbold v. Colvin*, 718 F.3d 1257, 1268 (10th Cir. 2013) (internal quotation marks and brackets omitted). Plaintiff contends that the ALJ's RFC did not do so, resulting in a defective hypothetical posed to the VE. Plaintiff specifically alleges the ALJ failed to include the following medically determinable impairments in his hypothetical: 1) plaintiff should avoid repetitive work or grasping with either hand and "rarely" use his left hand/arm for vocational activities; 2) plaintiff needed to alternately hold his left arm with his right, or rest it on a cushion; and 3) plaintiff had moderate depression, warranting some limitations. Dk. 10, p. 81.

But plaintiff has not established that he has moderate mental limitations, warranting any limitations. And by finding that Plaintiff could drive, operate a riding lawn mower, and engage in other listed daily activities, the ALJ's narrative implicitly discounts the credibility of plaintiff's testimony that he had to hold his left arm with his right, rest it on a cushion, or stay in bed for two to three days a week due to pain. And the repetitive work, grasping, and use of left hand vocationally are adequately included in the RFC findings given to the VE to the extent that they are borne out by the evidentiary record. *See* RFC (limiting plaintiff's use of his left arm to occasional pushing and pulling, no constant rapid repetitive hand movements, no overhead reaching and handling, and only occasional fingering).

Plaintiff additionally questions the VE's testimony about overhead reaching. The ALJ's hypothetical question to the VE stated, "[h]e'd be limited to no overhead reaching and handling with the left upper extremity." Dk. 3, Exh. 1, p. 1438. The ALJ later noted that "the DOT does not distinguish between overhead reaching and handling and regular reaching and handling," and asked, "would any of these jobs require overhead reaching and handling?" The VE testified:

> No sir, not any more than what would be considered normal, daily living activities, and it wouldn't necessarily need to be a bilateral reach if they could reach with their dominant arm on an occasional basis.

R. 1439. Plaintiff contends the VE did not define what she meant by "normal daily living activities," and that normal overhead reaching necessarily conflicts with the limitation of no overhead reaching or handling with the left extremity. But since the VE clarified that any overhead reaching or handling could be done with the right arm, no such conflict appears in the record. And using Plaintiff's right hand occasionally for reaching or handling would permit him to perform the jobs identified by the VE.

Plaintiff also argues that each of the jobs identified by the VE required frequent, rather than occasional, reaching and/or handling. Dr. Winkler opined that plaintiff was limited to occasional reaching and handling with his left hand. Similarly, the state agency consultant found plaintiff limited to occasional reaching with his left hand. Plaintiff specifically alleges that the VE's testimony that a bakery conveyor does only *occasional* reaching and handling conflicts with the DOT's statement that the job requires "frequent" handling. Plaintiff contends that reversal is necessary because the VE did not explain this discrepancy. *See Hackett v. Barnhart,* 395 F.3d 1168, 1175–76 (10th Cir. 2005) (holding that ALJ must ask VE how VE's testimony corresponds with DOT and obtain reasonable explanation for any conflicts between testimony and DOT). But the DOT's job requirements for bakery conveyor confirm the VE's testimony, stating the following: "Reaching: Occasionally – Exists up to 1/3 of the time; Handling: Occasionally – Exists up to 1/3 of the time; Fingering: Not Present – Activity or condition does not

15

exist." *See* Dictionary of Occupational Titles (4th ed. 1991) (DICOT)
929.684–010 (Packer), 1991 WL 688162, DICOT 524.687–022 (Bakery
Worker, Conveyor Line). Accordingly, the VE's testimony provided
substantial evidence to support the Commissioner's decision.

Having examined the specific claims of error, the Court finds sufficient
evidence that a reasonable mind might accept to support the conclusion of
non-disability. The standard of review "does not allow a court to displace the
agency's choice between two fairly conflicting views, even though the court
would justifiably have made a different choice had the matter been before it
*de novo.*" *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is
affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 7th day of January, 2015, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge